SHANTA DRIVER, Bar No. P65007
Driver, Schon & Associates PLC
19526-B Cranbrook Dr. Detroit, MI 48221
Telephone: (313) 683-0942
shanta.driver@ueaa.net
Counsel for Plaintiffs

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

Benjamin Royal, et al.,

Plaintiffs,

vs.

Detroit Public Schools Community District (DPSCD) and DPSCD Superintendent Nikolai Vitti in his official capacity,

Defendants.

Case No. 2:20-cv-11947-AJT-DRG
Hon. Arthur J. Tarnow

**PLAINTIFFS' MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

_____/

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSELS OF

RECORD:

Now come the Plaintiffs, by and through counsel, and, for the reasons

outlined in the accompanying Brief, hereby move this Honorable Court under Rule

65 of the Federal Rules of Civil Procedure to grant the following ex parte relief:

1.    Temporary restraining order directing Defendants Detroit Public School Community District (DPSCD) and Superintendent Nikolai Vitti to not conduct in-person instruction, until Defendants demonstrate that they have developed and are implementing a plan consistent with Plaintiffs' constitutional Due Process and Equal Protection rights and civil rights, and with science;

2.    Temporary restraining order directing Defendants to send a letter out to all DPSCD families and staff explaining the importance for DPSCD students to get tested for COVID-19, given scientific evidence that 31 percent of Florida's children are testing positive, there is growing evidence of complications and long-term delibitation even among asymptomatic children, and young people aged 10 to 19 are the most effective spreaders of COVID-19. Any school opening plan must have, as a prerequisite, knowledge of the extent to which COVID-19 has spread among DPSCD children, teachers, and staff;

3.    Order Defendants to show cause as to why this temporary restraining order should not be replaced by permanent injunction.

> By Plaintiffs' Attorneys,
> UNITED FOR EQUALITY AND
> AFFIRMATIVE ACTION LEGAL DEFENSE
> FUND (UEAALDF)

PLAINTIFFS' MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

BY:   _/s/ Shanta Driver_____

Shanta Driver (Michigan P65007)

Driver, Schon & Associates PLC

19526-B Cranbrook Dr.

Detroit, MI 48221

Telephone: (313) 683-0942

shanta.driver@ueaa.net

Counsel for Plaintiffs

Dated: July 20, 2020

PLAINTIFFS' MOTION FOR EMERGENCY EX PARTE TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A
PRELIMINARY INJUNCTION SHOULD NOT ISSUE

3

SHANTA DRIVER, Bar No. P65007
Driver, Schon & Associates PLC
19526-B Cranbrook Dr. Detroit, MI 48221
Telephone: (313) 683-0942
shanta.driver@ueaa.net
Counsel for Plaintiffs

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

Benjamin Royal, et al.,

Plaintiffs,

vs.

Detroit Public Schools Community
District (DPSCD) and DPSCD
Superintendent Nikolai Vitti in his
official capacity,

Defendants.

Case No. 2:20-cv-11947-AJT-DRG
Hon. Arthur J. Tarnow

**PLAINTIFFS' MOTION FOR
EMERGENCY EX PARTE
TEMPORARY RESTRAINING
ORDER AND ORDER TO
SHOW CAUSE WHY A
PRELIMINARY INJUNCTION
SHOULD NOT ISSUE**

_____/

As detailed further in the Plaintiffs' Complaint, unless this Court intervenes, the Detroit Public Schools Community District's (DPSCD's) decision to reopen the district with little to no planning to protect students, teachers, staff, and their families from contracting COVID-19 will result in some of the young people of Detroit being killed by COVID-19, countless numbers of Detroiters being infected with Coronavirus/COVID-19, and about 10 percent of those people dying from the virus.

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX
PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE
1

**ARGUMENT**

A plaintiff seeking a preliminary injunction must establish that he or she is likely to succeed on the merits, is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his or her favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.* 555 U.S. 7, 20 (2008).

**Plaintiffs Will Suffer Irreparable Injury If Relief Is Not Granted**

COVID-19 leads to serious illness and death, and there is no vaccine or cure. It spreads through water droplets and is possibly airborne. Children, especially young children, are not able to comply with CDC recommendations of social distancing.

Dr. Anthony Fauci, Director of the National Institute of Allergy and Infectious Diseases), has repeatedly stated that we know almost nothing about how the virus affects children and it is unsafe to act on largely anecdotal evidence.[1] What is known is that COVID-19 can cause deadly inflammation conditions in

---

[1] "We don't know everything about this virus and we really better be pretty careful, particularly when it comes to children... I think we better be careful [that] we are not cavalier in thinking that children are completely immune from the deleterious effects." ("Fauci urges caution on schools, warns against 'cavalier' idea that children are immune from COVID-19" Fox6now.com, May 12, 2020. Available at: https://fox6now.com/2020/05/12/fauci-urges-caution-on-schools-warns-against-cavalier-idea-that-children-are-immune-from-covid-19/ )

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

2

children and can result in lasting neurological and brain damage.[2] Florida reports that 31 percent of the state's children are testing positive for COVID-19. Dr. Alina Alonso, Palm Beach County's health department director, warns that much is unknown about the long-term health consequences for children who catch COVID-19. X-rays have revealed the virus can cause lung damage in people without severe symptoms. Dr. Alonso told Florida officials: "They are seeing there is damage to the lungs in these asymptomatic children... We don't know how that is going to manifest a year from now or two years from now," Alonso said. "Is that child going to have chronic pulmonary problems or not?"[3] It might be possible to prevent future re-infection: a recent study on COVID-19 published by the Royal College in England, shows that contracting the virus does not result in immunity from future COVID-19 infections.[4]

---

[2] "Some kids suffer mysterious brain damage from coronavirus, study finds." *New York Post,* July 6, 2020. Available at: https://nypost.com/2020/07/06/some-kids-suffer-mysterious-brain-damage-from-coronavirus-study-finds/

[3] Nearly one-third of children tested for COVID in Florida are positive. Palm Beach County's health director warns of risk of long-term damage." *South Florida Sun Sentinel,* July 14, 2020. Available at: https://www.sun-sentinel.com/coronavirus/fl-ne-pbc-health-director-covid-children-20200714-xcdall2tsrd4riim2nwokvmsxm-story.html

[4] The study from the UK shows that individuals who fight off COVID-19 see their number of antibodies peak three months after the onset symptoms but then swiftly decline, in some cases becoming undetectable. ("Immunity to Covid-19 could be lost in months, UK study suggests," The Guardian, July 12, 2020 https://www.theguardian.com/world/2020/jul/12/immunity-to-covid-19-could-be-lost-in-months-uk-study-suggests )

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

Children have been hospitalized, placed in intensive care, and have died from COVID-19. The virus's impact on children and its ability to pass on to adults via children is only beginning to be understood. The CDC published a study on April 2, 2020, which stated:

> Information on hospitalization status was available for 745 (29%) cases in children aged <18 years and 35,061 (31%) cases in adults aged 18–64 years. Among children with COVID-19, 147 (estimated range = 5.7%–20%) were reported to be hospitalized, with 15 (0.58%–2.0%) admitted to an ICU (Figure 2). Among adults aged 18–64 years, the percentages of patients who were hospitalized (10%–33%), including those admitted to an ICU (1.4%–4.5%), were higher. Children aged <1 year accounted for the highest percentage (15%–62%) of hospitalization among pediatric patients with COVID-19. Among 95 children aged <1 year with known hospitalization status, 59 (62%) were hospitalized, including five who were admitted to an ICU. The percentage of patients hospitalized among those aged 1–17 years was lower (estimated range = 4.1%–14%), with little variation among age groups (Figure 2). [5]

Children in Michigan, Florida, and New York have died from COVID-19.[6] In Texas, as of July 3 about 1,335 people had tested positive for COVID-19 in its child

---

[5] "Coronavirus Disease 2019 in Children in United States, February 12-April 2, 2020," CDC.gov, April 10, 2020
https://www.cdc.gov/mmwr/volumes/69/wr/mm6914e4.htm
[6] "5-year-old with rare complication becomes first Michigan child to die of COVID-19," *Detroit News,* April 19, 2020
https://www.detroitnews.com/story/news/local/detroit-city/2020/04/19/5-year-old-first-michigan-child-dies-coronavirus/5163094002/. "What we know about coronavirus risks to school age children," CNN.com, July 10, 2020, https://www.cnn.com/2020/07/10/health/coronavirus-school-age-children-wellness

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

4

care facilities. 894 were staff members and 441 were children.[7] Resarchers have reported finding nearly 300 cases of an alarming apparent side effect of COVID-19 in children called multisystem inflammation syndrome, or MIS-C, sometimes two to four weeks after infection.[8] In one study, MIS-C caused 80% of children to require intensive care, 20% required mechanical ventilation, and 2% died.[9]

A Rutgers University study focused on 48 children and young adults (newborns to 21 years old) in ICUs due to COVID-19 in March and April found that more than 80 percent had chronic underlying conditions such as immune suppression, obesity, diabetes, seizures, or chronic lung disease.[10] It is universally accepted that in Detroit, a socioeconomically-disadvantaged area, children disproportionately suffer from these and other comorbidities.

DPSCD's guidelines only recommend COVID-19 testing of students, teachers, and staff after they begin to show symptoms of it. But the CDC says that

---

[7] "Texas coronavirus cases top 1,300 from child care facilities alone," CNN.com, July 6, 2020. https://www.cnn.com/2020/07/06/health/texas-coronavirus-cases-child-care-facilities/index.html

[8] "Researchers report nearly 300 cases of inflammatory syndrome tied to Covid-19 in kids," June 29, 2020, https://www.statnews.com/2020/06/29/nejm-inflammation-children-covid19-misc/

[9] "Multisystem Inflammatory Syndrome in U.S. Children and Adolescents," *New England Journal of Medicine,* June 29, 2020 https://www.nejm.org/doi/full/10.1056/NEJMoa2021680

[10] "Characteristics and Outcomes of Children With Coronavirus Disease 2019 (COVID-19) Infection Admitted to US and Canadian Pediatric Intensive Care Units," *JAMA Pediatrics,* May 11, 2020. https://jamanetwork.com/journals/jamapediatrics/fullarticle/2766037

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

after COVID-19 makes contact with a person, it is 2-14 days before symptoms appear. After a test is conducted, it can be days to get the results. In a congregate setting like a school, where people spend several hours a day indoors with recycled air, by the time one gets a positive test result, that person already has had contact with scores of other people who themselves would need to quarantine to contain the virus.

The U.S. District Court of Michigan rejected a regime of testing only symptomatic inmates and detainees in Michigan jails because it exposed them to an outbreak of COVID-19: "Nor, given the percentage of asymptomatic COVID-19 cases and the virus' incubation period of up to fourteen days, can Respondents reasonably assert, as they do, that there are no COVID-19 cases in CCCF; they can only allege that there are no confirmed cases. *By the time a case is confirmed, it will almost certainly be too late to protect [a detainee's] constitutional rights.*" *Malam v. Adducci*, Case No. 5:20-cv-10829, (E.D. Mich. Apr. 5, 2020), at *36 (emphasis added).

It is certain that, among the more than 2,000 untested students and school staff in DPSCD summer school, some have the virus and will pass it on to others, and that in weeks' time the first positive results will emerge from DPSCD summer school. By the time positive test results come from DPSCD, it will already be "too late."

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

6

Reopening the schools in DPSCD will cause a new surge in COVID-19 cases in Detroit. In Israel, the May 17 reopening of schools has been a disaster. Israel now has a higher rate of new COVID-19 cases per capita than even the United States. In the first two weeks of July, 393 kindergartens and schools open for summer programs were shuttered due to cases of COVID-19. Udi Kliner, the deputy director of public-health services for Israel's health ministry, said, "1,400 Israelis were diagnosed with the disease [in June]. Of those, 185 caught it at events such as weddings, 128 in hospitals, 113 in workplaces, 108 in restaurants, bars, or nightclubs, and 116 in synagogues,... while 657—which is to say 47 percent of the total—were infected by the coronavirus in schools."[11]

**Granting a Preliminary Injunction Will Advance the Public Interest**

Preventing exposure of children, teachers, and staff and their families to COVID-19, a disease that leads to serious illness and death, prevents an outbreak within DPSCD which in turn prevents a renewed outbreak of COVID-19 among the people of Detroit.

---

[11] "Israeli Data Show School Openings Were a Disaster That Wiped Out Lockdown Gains," *Daily Beast*, July 14, 2020. Available at: https://www.thedailybeast.com/israeli-data-show-school-openings-were-a-disaster-that-wiped-out-lockdown-gains

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

**Harm to the Plaintiffs in the Absence of a TRO Outweighs the Harm to Defendants if a TRO Is Granted**

The harm to the Plaintiffs if a TRO is not granted is discussed in the Complaint and in this Brief above. The harm to Defendants if a TRO is granted is minimal. Defendants can broaden the online component of their summer-school curricular plans.

**Plaintiffs Are Likely to Succeed on the Merits**

The Fourteenth Amendment's Due Process Clause protects citizens from government violation of their substantive due process right to bodily integrity. "In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the right[ ] ... to bodily integrity...."). Washington v. Glucksberg, 521 U.S. 702, 720 (1997).

The Sixth Circuit of the U.S. Court of Appeals has recognized a liberty interest in bodily integrity in circumstances where state action exposed residents of Flint, Michigan to unsafe drinking water. Guertin v. Michigan, 912 F.3d 907 (6th Cir. 2019).

With regard to the Flint Water Crisis, the Michigan Constitution's Due Process clause, which is "coextensive with its federal counterpart," *Grimes v. Van Hook-Williams,* 302 Mich. App. 521, 530 (2013), recognizes this liberty interest.

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

8

The Michigan Appeals Court has declared: "We agree with the Court of Claims'
conclusion that '[s]uch conduct on the part of the state actors, and especially the
allegedly intentional poisoning of the water users of Flint, if true, may be fairly
characterized as being so outrageous as to be 'truly conscience shocking.' ...
[V]arious state actors intentionally concealed scientific data and made false
assurances to the public regarding the safety of the Flint River water even after
they had received information suggesting that the water supply directed to
plaintiffs' homes was contaminated..." *Mays v. Snyder,* 323 Mich. App. 1, ,61
(Mich. Ct. App. 2018).

Michigan Governor Whitmer's Executive Order 2020-142 ("the Order,"
Exhibit G) provides guidelines for resuming in-person school instruction during the
regular 2020-21 school year only. Even then, it mandates school districts to remain
closed until their school board adopts and implements a plan consistent with the
Order. Defendants DPSCD and Superintendent Vitti went forward with opening its
schools before the regular school year, for summer school on July 13, 2020, and
without approving the preparedness plan mandated by the Order. The Board of
Education adopted the plan on July 14, after school had started. (Exhibit H) Nor has
that unapproved Preparedness Plan been implemented consistent with CDC
guidelines or with Executive Order 2020-142. (See Figure A.)

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX
PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

9

**FIGURE A**

| Center for Disease Control and Prevention (CDC) Recommendations (Exhibit B) | DPSCD's Reopening Plan (July 12, 2020) (Exhibit D) | DPSCD Implementation on July 13, 2020 |
|---|---|---|
| **Safety Protocols for Busing and Student Transportation:** Listed at "*Required*" and *Priority*" (Emphasis added)<br>1. Clean, sanitize, and disinfect equipment including items such as car seats, wheelchairs, walkers, and adaptive equipment being transported to schools daily.<br>2. Clean and disinfect frequently touched surfaces in the vehicle (e.g., surfaces in the driver's cockpit, hard seats, arm rests, door handles, seat belt buckles, light and air controls, doors and windows, and grab handles) prior to morning routes and prior to afternoon routes.<br>3. Clean and disinfect transportation vehicles before and after every transit route. Children must not be present when a vehicle is being cleaned.<br>4. Create a plan for getting | All of the areas listed (on the left) for safety protocols for busing and student transportation in the DPSCD's Reopening Plan are listed as "not addressed" in the documented due to "limited District resources, capacity, etc." *See* the DPSCD Reopening Plan, page 29. These requirements and recommendations are included in the Appendix section of the document instead. Id. at 30-31. The following are "notes" listed corresponding to each area of the required guidelines and recommendations.<br>1. Transportation companies will not clean or sanitize personal or school equipment. At best, we can request the cleaning of equipment by bus attendants, but this may require bargaining with the union.<br>2. District transportation providers will clean and | 1. Cleaning was not done at all. (Declaration of Bus Driver Keyshawn Seibert)<br>2. Cleaning, sanitizing, and disinfecting were not done during the day of the use of the bus. Drivers were not given disinfectants to clean. Id.<br>3. Same as No. 2. Id.<br>4. No plan was created for bus drivers to follow if a student appears to be sick on the bus. Bus drivers were not told what protocol to follow or who to contact in such an emergency. Bus drivers were not told to keep |

| | | |
|---|---|---|
| students home safely if they are not allowed to board the vehicle.<br>5. Require the use of hand sanitizer before entering the bus. Hand sanitizer must be supplied on the bus.<br>6. If a student becomes sick during the day, they must not use group transportation to return home and must follow protocols outlined above. If a driver becomes sick during the day, they must follow protocols for sick staff outlined above and must not return to drive students.<br>7. Weather permitting, keep doors and windows open when cleaning the vehicle and between trips to let the vehicles thoroughly air out.<br>8. Weather permitting, keep doors and windows open when cleaning the vehicle and between trips to let the vehicles thoroughly air out. | disinfect frequently touched surfaces at minimum twice per day, prior to beginning routes.<br>3. District transportation providers will clean and disinfect frequently touched surfaces at minimum twice per day, prior to beginning routes.<br>4. Every precaution will be taken to transport students to school in a manner that supports the safety and health of the drivers and other students. In the event that a student is visibly ill, the driver will contact dispatch for further directions including contacting the parent or transporting the child to school using social distancing guidelines for quarantine.<br>5. Hand sanitizer will be provided on each yellow bus and District van.<br>6. In the event of a reported illness during the school day, parents will be notified to pick up children from school. Should parent | children to following social distancing guidelines or to keep them in safe distance from each other. Id.<br>5. Hand sanitizers were not given to bus drivers. It was not required to use sanitizer before entering the bus. Id.<br>6. Same as No. 4. Id.<br>7. The Status of ventilation is unknown. Bus drivers were not given any specific instructions or information on this issue.<br>8. Same as No. 7. |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

11

| | | |
|---|---|---|
| | transportation be unavailable, the Office of Student Transportation will work on an individual basis with each family to provide a safe route home.<br>7. To the fullest extent possible, windows will be opened to provide proper ventilation.<br>8. Weather permitting, keep doors and windows open when cleaning the vehicle and between trips to let the vehicles thoroughly air out. | |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX
PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

12

| | | |
|---|---|---|
| **When a confirmed case has entered a school, regardless of community transmission** Any school in any community might need to implement short-term closure procedures regardless of community spread if an infected person has been in a school building. If this happens, CDC recommends the following procedures regardless of the level of community spread: Dismiss students and most staff for 2-5 days. This initial short-term dismissal allows time for the local health officials to gain a better understanding of the COVID-19 situation impacting the school. This allows the local health officials to help the school determine appropriate next steps, including whether an extended dismissal duration is needed to stop or slow further spread of COVID-19. *See* CDC Interim Guidance for Administrators of US K-12 Schools and Child Care Programs, April 10, 2020 https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/guidance-for-schools.html | In the event of confirmed case, the District may close off portions of/an entire office area for a period of 24 hours and allow for additional cleaning/disinfecting before reopening. *See* DPSCD Reopening Plan, page 9 | |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

13

**Cloth Face Coverings**

Teach and reinforce use of cloth face coverings. Face coverings may be challenging for students (especially younger students) to wear in all-day settings such as school. Face coverings should be worn by staff and students (particularly older students) as feasible, and are most essential in times when physical distancing is difficult. Individuals should be frequently reminded not to touch the face covering and to wash their hands frequently. Information should be provided to staff, students, and students' families on proper use, removal, and washing of cloth face coverings.

Note: Cloth face coverings should not be placed on:
Children younger than 2 years old
- Anyone who has trouble breathing or is unconscious
- Anyone who is incapacitated or otherwise unable to remove the cloth face covering without assistance

Cloth face coverings are

**Personal Protective Equipment (PPE)**

In addition to following guidance around regular hand washing, hand sanitizing, daily cleaning and disinfecting of high-touch surfaces, and encouraging social distancing, the District plans to procure and distribute personal protective equipment for students and staff to use when in buildings. This equipment will include reusable masks for all students and staff, reusable face shields for instructional staff to use while teaching, KN95 masks for first responders, gloves and face shields for specific specialized staff groups, and additional items like gowns for nursing and health team members. Guidance will be provided to staff regarding the specific PPE that is expected for them based on their role and responsibilities. All PPE will be purchased centrally and delivered to locations before students and staff return to school and work. The District also plans to

PPE were not "centrally purchased and delivered to locations before students and staff return to school and work." Students were not given masks. Students wore masks they brought from home. (Declaration of Brian Peck) Mr. Peck himself was not provided with masks, nor any disinfectant wipes or hand sanitizers. Id. There was also no hand-washing or sanitizing station near the entrance of the school. Id.

No information was provided to staff, students, and students' families on proper use, removal, and washing of cloth face coverings. An account from a teacher at Mumford High School stated that a student asked the administration for an inhaler from

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

14

| | | |
|---|---|---|
| meant to protect other people in case the wearer is unknowingly infected but does not have symptoms. Cloth face coverings are not surgical masks, respirators, or other medical personal protective equipment.<br><br>*See* CDC recommendations on Considerations for Schools, May 19, 2020 https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/schools.html | purchase a limited supply of back-up materials; however, it is the expectation that any visitors or volunteers provide their own masks if/when they are in buildings and that students and staff wash and reuse any purchased cloth masks. In addition to PPE, the District will purchase a supply of disinfectant wipes, and set up portable hand sanitizer dispensers for use in classrooms and high traffic areas. In addition, the Operations team will install plexiglass barriers at reception desks. *See* the DPSCD Reopening Plan, page 4 | the nurse because he had severe asthma. The administrator told the student that the clinic was closed and that he should email her so she could help him inquire for help. (See Declaration of Brian Peck) In this case, the school did not have a medical staff stationed at the school in case of medical emergency and/or suspected cases of COVID-19. Plexiglass barriers were also not installed in the school. Id. |
| **Adequate Supplies**<br>Support healthy hygiene behaviors by providing adequate supplies, including soap, hand sanitizer with at least 60 percent alcohol (for staff and older children who can safely use hand sanitizer), paper towels, tissues, disinfectant wipes, cloth face coverings (as feasible) and no-touch/foot-pedal trash cans.<br><br>*See* CDC recommendations on Considerations for | In addition to PPE, the District will purchase a supply of disinfectant wipes, and set up portable hand sanitizer dispensers for use in classrooms and high traffic areas. In addition, the Operations team will install plexiglass barriers at reception desks. *See* DPSCD Reopening Plan, page 4<br>The District is committed to providing supplies of personal protective equipment to students and | A teacher from Mumford made an account that he was not given masks, disinfectant wipes, and sanitizers. Hand sanitizers are also not readily available at high traffic areas like the school entrance. (See Declaration of Brian Peck) |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

15

| | | |
|---|---|---|
| Schools, May 19, 2020 https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/schools.html | staff members...Additional items such as hand sanitizer and disinfectant wipes will be provided to each classroom on a regular basis throughout the year...The District will monitor the usage of these materials and make decisions about additional purchases should the need arise. *Id.* at 21 | |
| **Staggered Scheduling** Stagger arrival and drop-off times or locations by cohort or put in place other protocols to limit contact between cohorts and direct contact with parents as much as possible. When possible, use flexible worksites (e.g., telework) and flexible work hours (e.g., staggered shifts) to help establish policies and practices for social distancing (maintaining distance of approximately 6 feet) between employees and others, especially if social distancing is recommended by state and local health authorities. *See* CDC recommendations on Considerations for Schools, May 19, 2020 | No Staggered Scheduling. Same schedule for K-12 across board Teachers: 8:30am – 1:00pm Students 8:30am – 12:30pm *See* the DPSCD Reopening Plan, page 12 | No Staggered Scheduling. Same schedule for K-12 across board Teachers: 8:30am – 1:00pm Students 8:30am – 12:30pm *See* the DPSCD Reopening Plan, page 12 |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

| | | |
|---|---|---|
| https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/schools.html | | |
| **Water Systems** To minimize the risk of Legionnaire's disease and other diseases associated with water, take steps to ensure that all water systems and features (e.g., sink faucets, drinking fountains, decorative fountains) are safe to use after a prolonged facility shutdown. Drinking fountains should be cleaned and sanitized, but encourage staff and students to bring their own water to minimize use and touching of water fountains. *See* CDC recommendations on Considerations for Schools, May 19, 2020 https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/schools.html | No mention of water systems check or status of its safety and functioning standards | Status unknown |
| **Physical Barriers and Guides** • Install physical barriers, such as sneeze guards and partitions, particularly in areas where it is difficult for individuals to remain at least 6 feet apart (e.g., | Markings and signage on floors and walls ensuring that staff maintain distance when waiting to enter the building. *See* DPSCD Reopening Plan, page 10 Multiple entry and exit | Accounts from teacher Brian Peck that at Mumford High School, there is no signage, no marking on the floor. There are no physical barriers or |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX
PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

17

| reception desks). <br>• Provide physical guides, such as tape on floors or sidewalks and signs on walls, to ensure that staff and children remain at least 6 feet apart in lines and at other times (e.g. guides for creating "one way routes" in hallways). | points may be established at larger schools to allow for social distancing during arrival and dismissal. Signage will also reiterate the need to stay six feet apart while waiting to enter the building. <br>Id. at 24 | plexiglass set up. There is no tape or making on the ground for social distancing at the entrance to keep students and staff six feet apart while waiting to enter the building ( See Declaration of Brian Peck) |
|---|---|---|
| **Protections for Staff and Children at Higher Risk for Severe Illness from COVID-19** <br><br>Offer options for staff at higher risk for severe illness that limit their exposure risk (e.g., telework, modified job responsibilities). <br><br>Offer options for students at higher risk of severe illness that limit their exposure risk (e.g., virtual learning opportunities). <br><br>*See* CDC recommendations on Considerations for Schools, May 19, 2020 https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/schools.html | We hope all staff feels safe and comfortable enough to return and will assess these circumstances on an individual basis. The expectation is for all staff to return to work in the fall, however if individuals have underlying health conditions or are otherwise at risk, we encourage them to reach out to Employee Health Services at dps.ehs@detroitk12.org. *see* DPSCD Reopening Plan, page 25 <br>**Safety Protocols:Medically Vulnerable Students and Staff** <br>Create a process for students/families and staff to self-identify as high risk for severe illness due to COVID-19 and have a plan | When DPSCD sent out notification to teachers, it does not have any plans to identify individuals at high risks. (*See* Exhibit E, email notification from Superintendent Nikolai Vitti) <br>Students were not asked about their health conditions. A parent signed up for virtual summer school for her daughter. Instead of getting offered virtual classes, her daughter was placed in face-to-face summer school. She did not send her daughter to school on July 13 because |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX
PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

18

| | | |
|---|---|---|
| | in place to address requests for alternative learning arrangements or work reassignments. (Strongly Recommended)<br>Note: The District plans to empower parents to decide if they would like their student to have face to face or online learning instruction. Each student will be engaged to determine if special needs must be addressed due to COVID-19 related home challenges.<br>*See* DPSCD Reopening Plan, page 38 | her daughter had suppressed immune system and had undergone five surgeries. When She made inquiries to the school district about her daughter's situation, she never got a response or any accommodations from the school district. (Declaration of Famika Edmond and Declaration of Autumn Carr; also *see* Exhibit to Edmond Declaration, Assignment Letter to Autumn Carr) |
| **Designated COVID-19 Point of Contact**<br>Designate a staff person to be responsible for responding to COVID-19 concerns (e.g., school nurse). All school staff and families should know who this person is and how to contact them.<br>*See* CDC recommendations on Considerations for Schools, May 19, 2020<br>https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/schools.html | An "isolation area" will be designated at all school buildings and open offices so that anyone who experiences COVID- 19 symptoms or feels unwell, can be isolated from others while additional steps are taken to seek care. *See* DPSCD Reopening Plan, page 15 Monitoring and Accountability<br>As the District establishes safety guidelines for practices such as COVID- | The DPSCD Reoping Plan does not include a designated staff person who is responsible for responding to COVID-19 concerns. At Mumford, an administrator in charge told a student that there was no nurse in summer school and the clinic was |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX
PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW
CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

19

| | | |
|---|---|---|
| | 19 testing, temperature checks, social distancing, mask wearing, regular disinfecting, and limiting group gatherings, we will create ways for students, staff, and families to share feedback and report issues that may be unsafe Concerns about reopening can be shared via a dedicated inbox info.reopen@detroitk12.or g. In addition, any questions or concerns related to Operations (especially cleanliness, bathroom supplies, etc.) can be submitted via phone at 313-578-7018. Any concerns shared will be responded to within 24 hours by the appropriate department/team and a weekly status report of issues will be provided to the School Board for review. Id. at page 3 | closed when the student asked for help for his asthma. (See Declaration of Brian Peck) Parents, teachers, bus drivers, and students were not provided with the information as to who is responsible for attending to COVID-19 concerns. A parent of a student who has supressed his immune system signed up for virtual summer class to catch up with school work. Instead, she received in-person classes. When she reached out to DPSCD for inquiry, she was never given a response or accommodation. (See Declaration of Famika Edmond and Declaration of Autumn Carr) |
| **Leave (Time Off) Policies and Excused Absence Policies** Implement flexible sick leave policies and practices that | Will COVID-19 be considered a communicable disease so that staff who test positive will not have to use personal illness days | Will not have sick leave accommodation based on COVID-19. |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

20

| enable staff to stay home when they are sick, have been exposed, or caring for someone who is sick. | if they must self-quarantine? | A bus driver's account stated that he received information that DPSCD is hiring for bus drivers and if he did not accept the work, his unemployment benefits could be forfeited. (See Declaration of Keyshawn Seibert.) |
|---|---|---|
| • Examine and revise policies for leave, telework, and employee compensation. | Answer: No, currently that is not the case. | |
| | Question: What is the process when an employee is exposed to COVID-19 and must quarantine, but the employee does not have enough sick days, will the employee continue to receive pay? | |
| • Leave policies should be flexible and not punish people for taking time off, and should allow sick employees to stay home and away from co-workers. Leave policies should also account for employees who need to stay home with their children if there are school or childcare closures, or to care for sick family members. | Answer: Each individual situation regarding potential leave related to COVID-19 is unique. Any employee who may need to not attend work and is unable to telecommute based on their role should reach out to Employee Health Services to discuss their options at dps.ehs@detroitk12.org *See* DPSCD Reopening Plan, page 26 | In the assignment letter sent to the student Autumn Carr, attendance policy is "Students will be required to be in attendance, face to face, if assigned to face to face or virtually, if assigned to remote/virtual. If students are absent more than 3 days of summer school, they will be withdrawn for the remainder of the summer." *See* Exhibit to Edmond Declaration, Assignment Letter to Autumn Carr. |
| Develop policies for return-to-school after COVID-19 illness. CDC's criteria to discontinue home isolation and quarantine can inform these policies. | | |
| *See* CDC recommendations on Considerations for Schools, May 19, 2020 https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/schools.html | | |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

21

| | | |
|---|---|---|
| **Staff Training**<br>Train staff on all safety protocols.<br><br>Conduct training virtually or ensure that social distancing is maintained during training. *See* CDC recommendations on Considerations for Schools, May 19, 2020 https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/schools.html | **Phase 2 (June 22nd – July 6th)**<br>Much of the work essential for the District to prepare for summer school and the 2020-2021 school year is in-person work that cannot efficiently or effectively be done remotely. As such, the District reopens for in-person work in central offices and for 12-month employees. COVID-19 testing is required before employees come to work initially and all employees will participate in training on COVID-19 risk factors, mitigation measures, and District-specific protocols for how to stay safe. This training will be expanded in future phases and will be required for students. The training will be expanded to parents through the Parent Academy. In alignment with the most recent CDC guidance on school reopening, training topics will include (but are not limited to):<br>Healthy hygiene practices including:<br>-hand washing throughout day<br>-how to responsibly wear face coverings | Did not provide any meaningful training to the teachers that could be passed on to students. Teachers were only sent a 20 minute powerpoint video prior to their returning to in-person instructions. (See email from Superintendent Nikolai Vitti) |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

22

|  |  |  |
|---|---|---|
|  | -Maintaining clean workspaces through cleaning, disinfecting, and proper ventilation<br>-Social distancing best practices<br>-Limiting the sharing of materials<br>*See* DPSCD Reopening Plan, page 10 |  |

While much remains unknown about COVID-19, what is known is that it is a global pandemic that can lead to serious illness and death and is easily transmitted. It attacks major body systems, and can cause debilitating lifelong conditions among those who survive. There is no vaccine or cure. Science and public-health guidelines require mass testing, social distancing, strict adherence to wearing masks, hygiene, and repeated testing and aggressive contact-tracing to identify and contain the epidemic. There must be adequate supplies, preparation, and training to enact these measures.

Michigan Governor Whitmer's Executive Order 2020-142 only provides for the opening of school for the 2020-21 school year, and not summer school. (Exhibit G) It also orders that no school district may reopen without its board approving a Preparedness Plan that complies with the multiple "minimum" requirements of Executive Order 2020-142. (Exhibit G)

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

23

DPSCD and Superintendent Vitti reopened schools on July 13, 2020 with no Preparedness Plan in place and with no adequate preparation, notifying students, teachers, and staff only days in advance. DPSCD notified parents such as Plaintiff Famika Edmond that her child, whom she had requested virtual summer school, must attend in-person summer school or be disenrolled from the program.

Nor does DPSCD's July 14 "DPSCD Reopening Plan" reopen schools with an adequate testing infrastructure. Executive Order 2020-142 (Exhibit G) prevents the reopening of schools until Michigan gets out of Phase 3 of Michigan's "Safe Start Plan." Moving beyond Phase 3 according to the Plan means: "[T]he number of new cases and deaths has fallen for a period of time, but overall case levels are still high. When in the Improving [Phase 4] phase, most new outbreaks are quickly identified, traced and contained *due to robust testing infrastructure and rapid contact tracing*." (Exhibit F, Michigan's "Safe Start Plan," p. 11) (emphasis added).

DPSCD's plan states that testing will be inadequate to track the virus into the fall: "The capacity for COVID-19 testing is improving by the week and can likely support all students and staff being tested by September, but it is unclear how frequently re-testing can occur, or when anti-body tests will be available at scale." (Exhibit D, DPSCD Plan, p. 3) The plan refrains from requiring COVID-19 testing of students before reentering school until testing is more available:

"Students are not required to be tested for COVID-19. Student testing may be reconsidered if tests are developed that provide a rapid response and are widely available." (Exhibit D, p. 10)

DPSCD's plan does not provide for testing DPSCD students and staff who display symptoms of COVID-19. In the event of a person testing positive for COVID-19, DPSCD only plans to contact-trace for individuals who were within six feet of the confirmed-positive individual for more than 15 minutes. (Exhibit D, pp. 5, 13) DPSCD only notifies people who meet this condition, that they were exposed to COVID-19. COVID-19 can transmit between individuals in much less than 15 minutes. This violates CDC guidelines and all public health advice. In the event of a positive COVID-19 case, DPSCD's plan allows for hiding vital public-health information from many people within a school who likely were exposed to COVID-19, and by hiding this information hopes to keep the school open regardless of risk to children, teachers, and staff.

Defendants have knowledge of the danger posed by reopening schools. When the COVID-19 epidemic was less widespread than it is now, Michigan closed its schools. Israel now has an outbreak that outpaces even the United States due to a premature opening of its schools. See *supra* at 7. Michigan Governor Whitmer has been rolling back reopening plans in Michigan. On July 1, 2020, Governor Whitmer signed Executive Order 2020-143 which closes bars because "[b]ars have many

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

25

features that facilitate the spread of COVID-19: they are often crowded, indoors, and poorly ventilated." On July 17, 2020, Governor Whitmer signed Executive Order 2020-154 to provide "essential protection to vulnerable Michiganders." It provides for remote public meetings and for state government officials to conduct business remotely. The current spike in COVID-19 infections in Michigan has prompted Governor Whitmer to express "concern" about reopening Michigan schools in the fall.

Defendants' conduct shocks the conscience: while government officials work remotely, they are exposing Detroit's children and Michigan's most vulnerable to COVID-19.

Defendants' decision to fully reopen DPSCD for in-person instruction departs from every other district in Michigan. Just as how state officials arbitrarily administering an "interpretation test" for voter registration to discriminatorily deny black people the right to vote violates the Equal Protection Clause, *Louisiana v. United States,* 380 U.S. 145 (1965), Michigan officials violate the Equal Protection clause by arbitrarily and discriminatorily applying and/or failing to apply state law and executive orders to the detriment of Detroit's majority-black student population.

Since the beginning of the COVID-19 pandemic, black people, and majority-black cities like Detroit, have borne a disproportionate brunt of the pandemic.

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

26

While black people comprise 14.1 percent of the people of Michigan, they have suffered about 40 percent of the deaths from COVID-19 in Michigan. Detroit also is the city hardest-hit by COVID-19. As of July 11, 2020, while the City of Detroit has 6.7% of Michigan's population, it has reported 11,928 (17.1%) of the state's 69,625 confirmed COVID-19 cases.

Governor Whitmer's Executive Order 2020-142 issues guidance for reopening schools for the 2020-21 school year only, and even then only pursuant to minimum safety requirements and an approved plan. Defendants are moving forward anyway with fully reopening school buildings for summer school in Detroit, and only in Detroit, without a plan and without preparation.

Detroit is being used as an experimenting ground before conducting a broader reopening for Michigan's children. This experiment is deadly and unnecessary: Michigan can look to the CDC's guidelines and follow what other countries have done, who brought their overall infection rates under control and reopened gradually while mass, regular testing and contact tracing.

The Defendants' decision to choose Detroit, a majority-black city, as an experiment for Michigan to reopen its school sites for in-person instruction for summer school deliberately exposes Detroit children, teachers, staff, and their parents to potential serious illness or death with the knowledge of exposure and

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

27

1  violation of guidelines to prevent such exposure, violates their due process and

2  equal protection rights under the U.S. Constitution.

3                              **CONCLUSION**

4

5      For the reasons stated above, Plaintiffs' Motion should be granted.

6                              By Plaintiffs' Attorneys,
                                UNITED FOR EQUALITY AND
7                              AFFIRMATIVE ACTION LEGAL DEFENSE
                                FUND (UEAALDF)
8

9                              BY:   _/s/ Shanta Driver_____
                                Shanta Driver (Michigan P65007)
10                             Driver, Schon & Associates PLC
                                19526-B Cranbrook Dr.
11                             Detroit, MI 48221
                                Telephone: (313) 683-0942
12                             shanta.driver@ueaa.net
                                Counsel for Plaintiffs
13

14                             Dated: July 20, 2020

15

16

17

18

19

20

21

22

23

24  _____
    PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EMERGENCY EX
    PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW
    CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE
                                  28