UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VENIAS JORDAN, JR.,

    Plaintiff,

v.

DETROIT PUBLIC SCHOOLS COMMUNITY
and DR. NIKOLAI VITTI,

    Defendants.

Case No.:  20-cv-11947
Hon. Arthur J. Tarnow
Magistrate Judge David R. Grand

---

**DRIVER, SCHON
& ASSOCIATES PLC**
Shanta Driver (P65007)
19526-B Cranbrook Drive
Detroit, Michigan  48221
(313) 683-0942 (Telephone)
shanta.driver@ueaa.net
*Counsel for Plaintiffs*

**DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRCT
OFFICE OF THE GENERAL
COUNSEL**
Jenice C. Mitchell Ford (P61511)
jenice.mitchellford@detroitk12.org
Theophilus E. Clemons (P47991)
theophilus.clemons@detroitk12.org.
Rebecca Shaw-Hicks (P40732)
rebecca.hicks@detroitk12.org
3011 West Grand Boulevard, Ste. 1002
Detroit, Michigan 48202
(313) 873-4528 (Telephone)
(313) 873-4564 (Facsimile)
*Counsel for Defendants*

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' EMERGENCY *EX PARTE* MOTION FOR TEMPORARY
RESTRAINING ORDER ON THE ISSUE OF REQUIRING COVID-19
TESTING FOR STDENTS**

1

## STATEMENT OF ISSUES PRESENTED

I. Should Plaintiffs' *Motion for Emergency Ex Parte Temporary Restraining Order and Order To Show Cause Why A Preliminary Injunction Should Not Issue* Be Denied on the issue of requiring COVID-19 testing for students?

    Defendants Detroit Public Schools Community District and Dr. Nikolai P. Vitti answer "Yes."

    Plaintiffs answer "No."

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' EMERGENCY *EX PARTE* MOTION FOR TEMPORARY
RESTRAINING ORDER ON THE ISSUE OF REQUIRING COVID-19
TESTING FOR STDENTS**

**I.     PROCEDURAL STATEMENT**

On July 15, 2020, Plaintiffs filed a *Verified Class Action Complaint for Injunctive Relief* and *Plaintiffs' Motion For Ex Parte Temporary Restraining Order and Order to Show Cause Why A Preliminary Injunction Should Not Be Issued* in the Michigan Court of Claims against State of Michigan Governor Gretchen Whitmer, State of Michigan departments, City of Detroit Mayor Mike Duggan, Detroit Public Schools Community District ("DPSCD" or "District") and DPSCD Superintendent Dr. Nikolai P. Vitti ("Dr. Vitti"). DPSCD and Dr. Vitti (collectively "Defendants") filed a motion for summary disposition pursuant to MCR 2.116 (C)(4) seeking dismissal due to lack of jurisdiction. On July 17, 2020, Judge Cynthia Diane Stephens held a hearing wherein Plaintiffs' counsel agreed to voluntarily dismiss Mayor Duggan, DPSCD and Dr. Vitti.

On July 20, 2020, Plaintiffs initiated an action against DPSCD and Dr. Vitti in the Wayne County Circuit Court by filing: (i) *Class Action Complaint for Declaratory and Injunctive Relief and Petition for Writ of Mandamus, for Violation of Civil Rights* ("Complaint"); and (ii) *Plaintiffs' Motion For Ex Parte Temporary Restraining Order, Writ of Mandamus, and Order to Show Cause Why*

3

*A Preliminary Injunction Should Not Issue* ("Mandamus Motion"). The Complaint alleges both federal and state claims. On July 20, 2020, DPSCD and Dr. Vitti removed the lawsuit (by attaching a copy of the Complaint and Mandamus Motion) to this Court because all of the prerequisites had been met for removal pursuant to 28 U.S.C. §1441(a) and (b). On July 20, 2020, Plaintiffs filed with this Court, a motion titled *Plaintiff's Motion for Emergency Ex Parte Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue* ("TRO Motion") (Docket No. 3). Later that day, Plaintiffs seemingly filed a duplicate of the TRO motion in this Court, at Docket No. 6. Notably, the TRO Motion does not seek mandamus relief.

On July 22, 2020 at 11:00 a.m., this Honorable Court held a scheduling conference *via* Zoom. At the conference, the court remanded two of Plaintiff's claims and held the TRO in abeyance pending the parties agreement to a stipulated temporary restraining order. The Court has stated if DPSCD doesn't agree to require COVID-19 testing of students, the Court will grant Plaintiff's TRO and "shut down" summer school.

## II. **INTRODUCTION**

DPSCD is offering in-person summer school as allowed by, and in compliance with, applicable Executive Orders 110, 115 and 120 and Michigan Department of Education's Summer Programming Guidance – MEMO #COVID-

4

19-070. The Executive Orders 110, 115 or 120, the MDE Memorandum nor Centers for Disease Control requires testing of students. Nonetheless, Plaintiffs have filed this instant action seeking to stop DPSCD's delivery of in-person summer school services to the 630 students whose families and 160 teachers who have chosen to attend/work in-person summer school scheduled to occur from July 13 to August 6, 2020, Monday – Thursday from 8:30 a.m. to 12:30 p.m. Parents and teachers have a right to decide for themselves whether to attend in-person summer school – it is not Plaintiffs' decision to make.

As will be explained below, Plaintiffs' claims are without legal or factual merit, do not support the issuance of a temporary restraining order or preliminary injunction. In fact, the legal deficiencies of their claims should also lead to dismissal of their Complaint in its entirety.

### III. BACKGROUND

**A. MDE and WAYNE Resa Approve In-Person Summer School Moving Forward & DPSCD Implements Summer School In Accordance With All Applicable Requirements**

On June 12, 2020, the Michigan Department of Education issued "Summer Programming Guidance – MEMO #COVID-19-070" ("MDE Summer Programming Memo"), attached as **Exhibit A**. The memorandum provides in pertinent part:

> [P]rograms permitted by these executive orders with the aforementioned restrictions include but are not limited to traditional

> summer school programming . . . . As long as the program is in compliance with the parameters of E.O. 2020-110, E.O 2020-115 and E.O. 2020-120, ***local districts have the discretion to determine the delivery model of summer programs: remote instruction or in-person instruction within school buildings*** or in other settings outside of school.

**Exhibit A** (*emphasis added*). Upon receipt of the memo, DPSCD shared its desire to offer summer school with Wayne County Regional Educational Service Agency ("Wayne RESA"). In response, Wayne RESA's Superintendent replied

> I am taking the recent guidelines from the state as you can offer Face to face summer school. You will have to follow their social distancing guidelines, which is 6 feet and I believe PPE equipment. If that is feasible for you, you can do it.

Randy Liepa and Nikolai Vitti email exchange dated June 15, 2020, attached **Exhibit B**.

With parents' request for in-person summer school, teachers' agreement to teach in person summer school and the green light from the state and county to conduct in-person summer school – DPSCD is offering summer school from July 13 – August 6, 2020 on Monday – Thursday from 8:30 a.m. to 12:30 p.m. Approximately 20 air conditioned buildings are being utilized. To date, we have had a daily high attendance of 620 and the following requirements are in place as required by applicable Executive Orders: (i) social distancing; (ii) face masks worn by students and staff; (iii) hand washing/sanitizing stations; (iv) daily temperature

checks; (v) daily symptom checks; (vi) a 1:15 adult to student ratio; and (vii) each employee required to produce a negative COVID-19 before returning to work.

### B. None of the Applicable Law Requires COVID-19 Testing of Students

All of the aforementioned precautions comply with both Executive Orders 110, 115 and 120 – the law that governs in-person summer school and the MDE Memo – the guidance that governs in-person summer school. Notably, nowhere in the Executive Orders or MDE Memo is the requirement that students be tested. See Executive Orders 110, 115 and 120, attached as Composite **Exhibit C**.

Despite the facts that DPSCD is conducting voluntary summer school in accordance with all applicable Executive Orders, Plaintiffs seek to require DPSCD to test all students.

It is worth noting that none of the Governor's Executive Orders (those that apply to summer school and those that apply to school in the fall) require testing of students. To that end, if DPSCD is required to do this it will lead to Detroit being treated inequitably from any other school district in the state – and even the country. Simply put, DPSCD will be treated unfairly as its' families are having to carry a burden that has not been placed on other families in the state of Michigan (and even the entire United States of America). As stated earlier, Novi and Ecorse are also conducting in-person summer school and they aren't being required to test all students in order to continue summer school.

## IV. STANDARD OF REVIEW

Plaintiffs **are not** entitled to a preliminary injunction under the Sixth Circuit's well-established four-factor test. Under this test, the following factors must be balanced: (i) whether Plaintiff has shown a strong or substantial likelihood of success on the merits; (ii) whether Plaintiff has demonstrated irreparable injury; (iii) whether the issuance of a preliminary injunction would cause substantial harm to others; and (iv) whether the public interest is served by the issuance of an injunction. Capobianco v. Summers, 377 F.3d 559, 561 (6th Cir. 2004). The first factor is frequently dispositive in the first amendment context. Id. See also DejaVu of Nashville, Inc. v. Metro Gov't of Nashville & Davidson County, Tenn., 274 F.3d 377, 400 (6th Cir. 1989).

## V. ARGUMENT

### A. Plaintiffs Do Not Have a Strong or Substantial Likelihood of Success on the Merits

#### 1. Plaintiffs' Substantive Due Process - Bodily Integrity Claims under Michigan Constitution, Article I §17 and Fourteenth Amendment Fail as a Matter of Law

"To sustain a substantive due process claim, a plaintiff must show that the particular interest in question is protected by the Fourteenth Amendment and that the government's deprivation of that interest 'shocks the conscience." Guertin v.

8

Michigan, 912 F.3d 907, 922 (6th Cir. 2019). "The critical question in determining the appropriate standard of culpability is whether the circumstances allowed the state actors time to fully consider the potential consequences of their conduct." Ewolski v. City of Brunswick, 287 F.3d 492, 510 (6th Cir. 2002). The focus is upon the entirety of the situation – "the type of harm, the level of risk of the harm occurring, and the time available to consider the risk of harm are all necessary factors in determining whether an official was deliberately indifferent." *Id*. at 591.

The 6th Circuit has stressed that deliberate indifference claims require "something more":

> [A] something that we have variously described as callous disregard for the risk of injury, or action in an arbitrary manner that shocks the conscience or that indicates an intent to injure. That additional element – be it termed callous disregard or intent to injure – ensures that only the most egregious official conduct can be said to be arbitrary in the constitutional sense.

Schroder v. City of Fort Thomas, 412 F.3d 724, 730 (6th Cir. 2005).

Applying the foregoing standards, Plaintiffs cannot establish that Defendants are being deliberately indifferent.

### 2. Plaintiffs' Substantive Due Process - Bodily Integrity Claims under Michigan Constitution, Article I §17 Fails as a Matter of Law

Plaintiffs correctly assert that the Due Process clause of Art 1 § 17 of the Michigan Constitution provides that the state may not deprive a person of life, liberty or property without due process of law. Plaintiffs further assert that the

9

U.S. Supreme Court has recognized a liberty interest in bodily integrity in circumstances where state action exposed residents of Flint, Michigan to unsafe drinking water, citing Mays v. Snyder, 323 Mich. App. 1, 62 (2018), and that the Defendants are acting in a manner that is deliberately indifferent toward the bodily integrity of Plaintiffs by reopening the schools for summer school. However, the actions of the officials in Mays v. Snyder, involving the allegedly intentional poisoning of water users in the city of Flint, and the actions of DPSCD and Dr. Vitti in his official capacity are clearly distinguishable.

In Mays, Plaintiffs alleged nonconsensual entry of contaminated and toxic water into their bodies as a result of a decision to pump water from the Flint River into their homes. The Mays Court decided that such actions may be fairly characterized as being so outrageous as to be truly conscience-shocking, and therefore could qualify as a violation of the plaintiffs' right to bodily integrity under the Michigan Constitution.

In the instant case, there is no evidence that Defendants engaged in decisions that would deliberately expose students or staff to COVID-19. To the contrary, DPSCD and Dr. Vitti have taken all reasonable measures to avoid the spread of COVID-19 among students and staff by requiring a daily symptom check, a daily temperature check, daily disinfection of classrooms and buses, mandating facial coverings, mandating social distancing and reducing the teacher-

to-student ratio. All of these carefully planned and executed measures cut against Plaintiffs' argument that DPSCD and Dr. Vitti are acting in a manner that show deliberate indifference, and for these reasons, Plaintiffs' substantive due process claim under both the Michigan Constitution and 14th Amendment must fail.

### 3. Plaintiffs' Equal Protection – Racial Discrimination Claims under Fourteenth Amendment and Michigan Constitution, Article I §2 & Nondiscrimination in Education Claim under Michigan Constitution, Article VIII §2 Fail as a Matter of Law

The Fourteenth Amendment of the U.S Constitution provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Constitution. Amend. XIV. Similarly, the Michigan Constitution at, Article I, Section 2, provides that "[n]o person shall be denied the equal protection of the laws." Mich Const Art I, § 2. In reliance on these sections of the United States and Michigan constitutions, Plaintiffs faultily assert that "Defendants' decision to choose Detroit, a majority-black city, as its experiment to reopen its school sites for in-person instruction for summer school deliberately exposes children, teachers, staff . . . violates their right to equal protection." See Complaint at ¶87. This assertion must fail as a matter of law.

In Harville v. State Plumbing and Heating, Inc., 218 Mich. App. 302 (1996), the court stated it was convinced that Art. 1, § 2 of the Michigan Constitution, like the Fourteenth Amendment, prohibits only intentional or

11

purposeful discrimination. Harville at 319. The fact that DPSCD, which is comprised of mostly African-American students, decided to offer in-person, summer classes, does not equate to intentional or purposeful discrimination against its largest population of students. Inherent in DPSCD's operations is the unavoidable fact that virtually everything DPSCD does affects mostly African-American students. Whether DPSCD opens or closes or engages in a combination of both, necessarily impacts its African-American students more than any other group because that is the population DPSCD largely serves. Plaintiffs' allegations that DPSCD is experimenting on its own children is non-sensical at best and reckless at worst.

### B. Plaintiffs Will Not Suffer Irreparable Injury

A moving party must show that irreparable harm is "both certain and immediate, rather than speculative or theoretical." Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 154 (6th Cir.1991). See also Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). In addition, and of critical importance, "the irreparable harm requirement contemplates the inadequacy of alternate remedies available to the

plaintiff." Smith & Nephew, Inc. v. Synthes (U.S.A.), 466 F.Supp.2d 978, 982 (W.D.Tenn. 2006). Thus, "[i]rreparable harm will not be found where alternatives already available to the plaintiff make an injunction unnecessary." Curtis 1000, Inc. v. Youngblade, 878 F.Supp. 1224, 1248 (N.D.Iowa 1995).

Plaintiffs claim that it is a certainty that "among the 2000 students and hundreds of school staff in DPSCD summer school, that some have the virus and are asymptomatic and will pass it on to others, and that in weeks' time the first positive results will emerge from DPSCD summer school." *Plaintiffs' Motion for Order to Show Cause Why a Preliminary Injunction Should Not Be Issued* at p. 4. This statement is entirely and purely speculative. In fact, to avoid transmission of COVID-19, DPSCD has required: (i) social distancing; (ii) facial coverings for staff and students; (iii) daily temperature checks for staff and students; (iv) daily self-assessments of symptoms for staff and students; (v) daily disinfecting of classrooms and buses; and (vi) a 1:15 adult-to-student ratio in the classrooms. Moreover, before reporting to teach summer school, all staff has been required to show proof of negative COVID-19 test results. With these measures, Defendants have taken responsible and reasonable steps to ensure the safety of the staff and students during the brief summer school session. Plaintiffs simply cannot show that staff and students will fall ill to COVID-19 by their mere presence at summer school where all of these precautions have been implemented. "[I]t is well settled

13

that an injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural." *Dunlap v City of Southfield,* 54 Mich App 398, 403, 221 NW2d 237 (1974).

Plaintiffs allege a violation of their Substantive Due Process Rights-Bodily Integrity under the 14th Amendment. In their motion, in support of this claim, Plaintiffs cite to Malam v. Adducci, Case No. 5:20-cv-10829 (E.D. Mich. Apr. 5, 2020) in support of its argument that Plaintiff's will suffer irreparable injury.

However, Malam is clearly distinguishable because, unlike DPSCD students who attend summer school voluntarily, the petitioner there was a detainee in a correctional facility. In concluding that the COVID-19 pandemic created a high risk that absent an injunction the petitioner would suffer irreparable harm in the form of loss of health or life as a result of contracting the COVID-19 virus, the Court gave great weight to the fact that petitioner was involuntarily confined in a county correctional facility, with no ability to leave the facility, or exercise disease prevention measures: "[Petitioner's] detention is mandatory." p. 1. "[C]orrectional and detention facilities "present[ ] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." p. 7. " . . . many detention conditions create a heightened risk of danger to detainees. These include: low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most

patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (*e.g.*, social distancing and frequent handwashing)." Id. ". . . detention confinement creates a "tinderbox scenario" where rapid outbreak is extremely likely, and extremely likely to lead to deadly results as resources dwindle on an exponential level." p. 8. "Respondents have confined Petitioner in an environment where she "shares toilets, sinks, phones, and showers, eats in communal spaces, and is in close contact with the many other detainees and officers." Petitioner's involuntary interaction with purportedly asymptomatic guards who rotate shifts is also a significant exposure factor. Petitioner's involuntary interaction with purportedly asymptomatic guards who rotate shifts is also a significant exposure factor." p. 8

Noting petitioner's numerous underlying health issues, the Court concluded there was a "substantial risk" of catching the COVID-19 virus for any group of human beings in "highly confined conditions, such as petitioner within the CCCF facility." p .9.

*Malam* is clearly inapplicable to this case.

**C. The Issuance of Injunctive Relief Will Cause Substantial Harm to the 630+ Students Attending In-Person Summer School; Harm to the Plaintiffs in the Absence of a Preliminary Injunction Does Not Outweigh the Harm to Defendants if a Preliminary Injunction Is Issued**

As mentioned earlier, attendance for both students and teachers in the summer school is entirely voluntary; no one is being forced to attend or to teach. For those persons who <u>do</u> want to participate, more than adequate measures, as outlined above, have been put in place to minimize the spread of COVID-19. Defendants are committed to providing in-person learning for a population of students that is already behind the proverbial 8-ball; getting in the way of their education should not be rewarded.

Very recently the Sixth Circuit Court of Appeals held that the right of access to education is a fundamental right. Plaintiffs cite no law supporting their claim that students who have chosen to attend in-person summer school should be deprived of access to same. As such, Plaintiffs' claim that they would be harmed more than DPSCD students by the absence of an injunction is based on speculation and conjecture.

**D. Granting a Preliminary Injunction Will Not Advance The Public Interest**

The State of Michigan is currently in Phase 4 of Governor Gretchen Whitmer's plan for reopening the economy. Under that plan, schools are allowed to provide in-person summer school in small groups. Here, DPSCD is offering

socially distanced classes of 15 or fewer students. The Michigan Department of Education has also issued a memorandum authorizing in-person summer school. **Exhibit B**.

Just as the public has a strong interest in a recovering economy, so too does it have an interest in in-person learning for its students. In this regard, DPSCD has taken thoughtful, deliberate and careful steps, as required by Governor Whitmer and guided by the Centers for Disease Control ("CDC"), to open its doors for summer school to give its students the chance they so keenly need in order to catch up.

## VI. CONCLUSION

There is no legal authority for the judge's decision to shut down summer school if DPSCD doesn't agree to test all students within 2 days. Plaintiffs' have not shown a likelihood of success on the merits. More specifically, there is no legal authority for this ruling under any of Governor Whitmer's Executive Orders or MDE guidance. As a result of the Court's impending ruling (if DPSCD doesn't enter into a stipulated TRO agreeing to test students) - DPSCD will be treated unfairly as its' families are having to carry a burden that has not been placed on other families in State (and even country).

For this, and all of the other foregoing reasons, Defendants respectfully request that Plaintiffs' Motion For Emergency *Ex Parte* Temporary Restraining

Order to Show Cause Why a Preliminary Injunction Should Not Issue - be denied in its entirety. Alternatively, if the Court is still inclined to require COVID-19 testing of all students attending DPSCD in-person summer school – we would request that testing not be required to begin until Monday, July 27, 2020.

        Respectfully Submitted by:

        DETROIT PUBLIC SCHOOLS
        COMMUNITY DISTRICT
        OFFICE OF THE GENERAL COUNSEL

        /s/ Jenice C. Mitchell Ford
        Jenice C. Mitchell Ford (P61511)
        jenice.mitchellford@detroitk12.org
        Theophilus E. Clemons (P47991)
        theophilus.clemons@detroitk12.org
        Rebecca Shaw-Hicks (P40732)
        rebecca.hicks@detroitk12.org
        3011 West Grand Boulevard, Suite 1002
        Detroit, Michigan 48202
        (313) 873-4528 (Telephone)
        (313) 873-4564 (Facsimile)
        *Counsel for Defendants*

Dated: July 21, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

Respectfully Submitted by:

DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT
OFFICE OF THE GENERAL COUNSEL

/s/ Jenice C. Mitchell Ford
Jenice C. Mitchell Ford (P61511)
jenice.mitchellford@detroitk12.org
Theophilus E. Clemons (P47991)
theophilus.clemons@detroitk12.org
Rebecca Shaw-Hicks (P40732)
rebecca.hicks@detroitk12.org
3011 West Grand Boulevard, Suite 1002
Detroit, Michigan 48202
(313) 873-4528 (Telephone)
(313) 873-4564 (Facsimile)
*Counsel for Defendants*