# EXHIBIT A

STATE OF MICHIGAN
**DEPARTMENT OF EDUCATION**
LANSING

GRETCHEN WHITMER
GOVERNOR

MICHAEL F. RICE, Ph.D.
STATE SUPERINTENDENT

## MEMORANDUM

**DATE:**     June 12, 2020

**TO:**        Local and Intermediate School District Superintendents
              Public School Academy Directors

**FROM:**      Sheila A. Alles, Chief Deputy Superintendent

**SUBJECT:**   Summer Programming Guidance – MEMO #COVID-19-070

On Monday, June 1, 2020, Governor Whitmer signed Executive Order 2020-110 to lift the stay at home order and to address temporary restrictions on certain events, gatherings, and businesses. On Friday, June 5, 2020, Governor Whitmer signed Executive Order 2020-115 that permits Regions 6 and 8 to move to Phase 5 of the Michigan Safe Start Plan as of June 10, 2020. Region map is linked here. The following Friday, June 12, 2020, Governor Whitmer signed Executive Order 2020-120 that allows overnight camps to resume operations as of June 15, 2020 subject to guidance from the Michigan Department of Licensing and Regulatory Affairs.

Additionally, E.O. 2020-120 lifts the suspension of school sports activities and other in-person extracurricular activities, subject to rules on social distancing and given the closure of indoor exercise facilities. These executive orders have a significant implicit impact on summer programming for children.

Upon the expiration of a district's 2019-2020 school year, summer programming may occur within school buildings or in other settings outside of the school setting as long as the program is in compliance with the parameters laid out in E.O. 2020-110 and E.O. 2020-115. Specifically, Section 5 of E.O. 2020-115 states, "Any business or operation that requires its employees to leave their home or place of residence for work is subject to the rules on workplace safeguards in E.O. 2020-114 or any order that may follow from it."

In addition, Section 4 of E.O. 2020-110 and Section 6, of E.O. 2020-115 state, "Any individual who leaves his or her home or place of residence must:

- Follow social distancing measures recommended by the Centers for Disease Control and Prevention ("CDC"), including remaining at least six feet from

**STATE BOARD OF EDUCATION**

CASANDRA E. ULBRICH – PRESIDENT • PAMELA PUGH – VICE PRESIDENT
MICHELLE FECTEAU – SECRETARY • TOM MCMILLIN – TREASURER
TIFFANY D. TILLEY – NASBE DELEGATE • JUDITH PRITCHETT
LUPE RAMOS-MONTIGNY • NIKKI SNYDER

608 WEST ALLEGAN STREET • P.O. BOX 30008 • LANSING, MICHIGAN 48909
www.michigan.gov/mde • 833-633-5788

Page 2
June 12, 2020

        people from [sic] outside the individual's household to the extent feasible
        under the circumstances.

- Wear a face covering over his or her nose and mouth—such as a homemade
  mask, scarf, bandana, or handkerchief—when in any enclosed public space,
  unless the individual is unable medically to tolerate a face covering."

Summer learning opportunities and programming that include outdoor fitness
classes, athletic practices, training sessions, or games are permitted as described in
E.O. 2020-110, Section 14(a) "provided that coaches, spectators, and participants
not from the same household maintain six feet of distance from one another at all
times during such activities, and that equipment and supplies are shared to the
minimum extent possible and are subject to frequent and thorough disinfection and
cleaning."

In addition, "indoor gymnasiums, fitness centers, recreation centers, sports facilities,
exercise facilities, exercise studios, and the like" are closed per Section 12(b) of E.O.
2020-110 and cannot be used for summer programming. Additionally, E.O. 2020-
115, Section 7 provides rules on gatherings, performances, and events.

Finally, E.O. 2020-120, Section 2 strikes the second sentence of Executive Order
2020-65 Section I (1) and replaces it with: "Consistent with the rules described in
Executive Order 2020-110 (including any rules on social distancing and the closure of
indoor exercise facilities) and Executive Order 2020-115, which order applies to the
region in which the school is located, and any orders that follow from them, K-12
school sports activities and other in-person extracurricular school activities may
resume."

Programs permitted by these executive orders with the aforementioned restrictions
include but are not limited to traditional summer school programming, work-based
learning programs for career and technical education students, and early childhood
programming. These programs are not viewed as social gatherings or events as listed
in E.O. 2020-110, Section 5 and E.O. 2020-115, Section 7 (a) (2). E.O. 2020-110,
Section 2 and E.O. 2020-115, Section 4 both state that "any work that is capable of
being performed remotely (i.e., without the worker leaving his or her home or place
of residence) must be performed remotely." This restriction applies to the summer
programs included herein. As long as the program is in compliance with the
parameters in E.O. 2020-110, E.O. 2020-115, and E.O 2020-120, local districts have
the discretion to determine the delivery model of summer programs: remote
instruction or in-person instruction within school buildings or in other settings outside
of school.

Separate guidance regarding summer programming for students with disabilities will
be provided soon.


cc:    Michigan Education Alliance
       Confederation of Michigan Tribal Education Directors

# EXHIBIT B

## Jenice Mitchell Ford

| | |
|---|---|
| **From:** | Nikolai Vitti |
| **Sent:** | Monday, June 15, 2020 5:23 PM |
| **To:** | Kristen Howard; Iranetta Wright; Benjaman Jackson; Machion Jackson; Luis Solano; Jeremy Vidito |
| **Subject:** | Fw: [supers] FW: MDE COVID-19 Guidance |

Sent from my BlackBerry 10 smartphone.

**From:** Randy Liepa <LiepaR@resa.net>
**Sent:** Monday, June 15, 2020 5:18 PM
**To:** Nikolai Vitti
**Subject:** Re: [supers] FW: MDE COVID-19 Guidance

This message has originated from an **External Source**. Please use proper judgement and caution when opening attachments, clicking links, or responding to this email.

I am taking the recent guidelines from the state as you can offer Face to face summer school. You will have to follow their social distancing guidelines, which is 6 feet and I believe PPE equipment. If that is feasible for you, you can do it. Randy

Sent from my iPhone

On Jun 15, 2020, at 4:29 PM, Nikolai Vitti <nikolai.vitti@detroitk12.org> wrote:

> Hi Randy. What about face to face summer school? We have about 1500 families that have requested it. NV
>
> Sent from my BlackBerry 10 smartphone.
>
> **From:** Randy Liepa
> **Sent:** Monday, June 15, 2020 4:02 PM
> **To:** supers@groups.resa.net
> **Subject:** [supers] FW: MDE COVID-19 Guidance
>
> This message has originated from an **External Source**. Please use proper judgement and caution when opening attachments, clicking links, or responding to this email.
>
> You probably have seen this, update on procedures to provide summer programs. Randy
>
> **From:** Michael Latvis <latvism@resa.net>
> **Sent:** Monday, June 15, 2020 9:35 AM
> **To:** Directors Team <Directors_Team@resa.net>
> **Subject:** Fwd: MDE COVID-19 Guidance

1

FYI regarding summer programs.

Mike Latvis
Executive Director of Legislative Affairs
Wayne RESA
33500 Van Born Rd.
Wayne, MI 48184
C: 248-379-5897
O: 734-334-1820

Begin forwarded message:

**From:** "Liethen, Caroline (MDE)" <LiethenC@michigan.gov>
**Subject: MDE COVID-19 Guidance**
**Date:** June 15, 2020 at 9:32:54 AM EDT
**To:** "Liethen, Caroline (MDE)" <LiethenC@michigan.gov>



**MEMO #COVID-19-070**

*Summer Programming Guidance*

Guidance related to Executive Order 2020-120 that allows overnight camps to resume operations as of June 15, 2020 subject to guidance from the Michigan Department of Licensing and Regulatory Affairs.

http://www.michigan.gov/documents/mde/Summer_Programming_Guidance_693768_7.pdf

**\* To access all COVID-19 Updates, go to the MDE website at** www.michigan.gov/mde**.**

Caroline Liethen
Legislative Liaison
Office of Public and Governmental Affairs
Michigan Department of Education
Office: 517-241-7017
Cell: 517-449-1974

**You have the power to shape your future, and the future of all children, by counting everyone in your home in the 2020 Census.**

This email is intended only for the use of the addressee(s) named herein. It may contain legally privileged and confidential information. If you are not the intended recipient, or an authorized representative, consider this notification that any review, copying, or distribution of this email or attachments is prohibited. If this email was received in error, please immediately notify the sender by return email and delete the email. Thank you.

--
To unsubscribe from this group and stop receiving emails from it, send an email to supers+unsubscribe@groups.resa.net.

This email is intended only for the use of the addressee(s) named herein. It may contain legally privileged and confidential information. If you are not the intended recipient, or an authorized representative, consider this notification that any review, copying, or distribution of this email or attachments is prohibited. If this email was received in error, please immediately notify the sender by return email and delete the email. Thank you.

# EXHIBIT C

# Executive Order 2020-110 (COVID-19) (June 1, 2020)

**EXECUTIVE ORDER**

**No. 2020-110**

**Temporary restrictions on certain events, gatherings, and businesses**

**Rescission of Executive Orders 2020-69 and 2020-96**

The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. There is currently no approved vaccine or antiviral treatment for this disease.

On March 10, 2020, the Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, I issued Executive Order 2020-4. This order declared a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended (EMA), MCL 30.401 et seq., and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended (EPGA), MCL 10.31 et seq.



Since then, the virus spread across Michigan, bringing deaths in the thousands, confirmed cases in the tens of thousands, and deep disruption to this state's economy, homes, and educational, civic, social, and religious institutions. On April 1, 2020, in response to the widespread and severe health, economic, and social harms posed by the COVID-19 pandemic, I issued Executive Order 2020-33. This order expanded on Executive Order 2020-4 and declared both a state of emergency and a state of disaster across the State of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, and the Emergency Powers of the Governor Act of 1945. And on April 30, 2020, finding that COVID-19 had created

emergency and disaster conditions across the State of Michigan, I issued Executive Order 2020-67 to continue the emergency declaration under the Emergency Powers of the Governor Act, as well as Executive Order 2020-68 to issue new emergency and disaster declarations under the Emergency Management Act.

Those executive orders have been challenged in *Michigan House of Representatives and Michigan Senate v Whitmer*. On May 21, 2020, the Court of Claims ruled that Executive Order 2020-67 is a valid exercise of authority under the Emergency Powers of the Governor Act but that Executive Order 2020-68 is not a valid exercise of authority under the Emergency Management Act. Both of those rulings are being challenged on appeal.

On May 22, 2020, I issued Executive Order 2020-99, again finding that the COVID-19 pandemic constitutes a disaster and emergency throughout the State of Michigan. That order constituted a state of emergency declaration under the Emergency Powers of the Governor Act of 1945. And, to the extent the governor may declare a state of emergency and a state of disaster under the Emergency Management Act when emergency and disaster conditions exist yet the legislature has declined to grant an extension request, that order also constituted a state of emergency and state of disaster declaration under that act.

The Emergency Powers of the Governor Act provides a sufficient legal basis for issuing this executive order. In relevant part, it provides that, after declaring a state of emergency, "the governor may promulgate reasonable orders, rules, and regulations as he or she considers necessary to protect life and property or to bring the emergency situation within the affected area under control." MCL 10.31(1).

Nevertheless, subject to the ongoing litigation and the possibility that current rulings may be overturned or otherwise altered on appeal, I also invoke the Emergency Management Act as a basis for executive action to combat the spread of COVID-19 and mitigate the effects of this emergency on the people of Michigan, with the intent to preserve the rights and protections provided by the EMA. The EMA vests the governor with broad powers and duties to "cop[e] with dangers to this state or the people of this state presented by a disaster or emergency," which the governor may implement through "executive orders, proclamations, and directives having the force and effect of law." MCL 30.403(1)–(2). This executive order falls within the scope of those powers and duties, and to the extent the governor may declare a state of emergency and a state of disaster under the Emergency Management Act when emergency and disaster conditions exist yet the legislature has not granted an extension request, they too provide a sufficient legal basis for this order.

To suppress the spread of COVID-19, to prevent the state's health care system from being overwhelmed, to allow time for the production of critical test kits, ventilators, and personal protective equipment, to establish the public health infrastructure necessary to contain the spread of infection, and to avoid needless deaths, it was reasonable and necessary to direct residents to remain at home or in their place of residence to the maximum extent feasible. To that end, on March 23, 2020, I issued Executive Order 2020-21, ordering all people in Michigan to stay home and stay safe. In Executive Orders 2020-42, 2020-59, 2020-70, 2020-77, 2020-92, and 2020-96, I extended that initial order, modifying its scope as needed and appropriate to match the ever-changing circumstances presented by this pandemic.

The measures put in place by these executive orders have been effective: the number of new confirmed cases each day continues to drop. Although the virus remains aggressive and persistent—on May 31, 2020, Michigan reported 57,397 confirmed cases and 5,491 deaths—the strain on our health care system has begun to relent, even as our testing capacity has increased. We are now in the process of gradually resuming in-person work and activities. In so doing, however, we must move with care, patience, and vigilance, recognizing the grave harm that this virus continues to inflict on our state and how quickly our progress in suppressing it can be undone.

With this order, I find it reasonable and necessary to move the state to Stage 4 of the Michigan Safe Start Plan. As a result, Michiganders are no longer required to stay home. Instead, certain businesses will remain closed and specific activities that present a heightened risk of infection will remain prohibited. Any work that is capable of being performed remotely must be performed remotely.

Under this order, retailers will be allowed to resume operations on June 4. Restaurants and bars may reopen fully on June 8. Swimming pools and day camps for kids will also be permitted to reopen on the same day. Those businesses and activities will be subject to safety guidance to mitigate the risk of infection. Other businesses and activities that necessarily involve close contact and shared surfaces, including gyms, hair salons, indoor theaters, tattoo parlors, casinos, and similar establishments, will remain closed for the time being.

Michiganders must continue to wear face coverings when in enclosed public spaces and should continue to take all reasonable precautions to protect themselves, their co-workers, their loved ones, and their communities. Indoor social gatherings and events of more than 10 people are prohibited. Outdoor social gatherings and events are permitted so long as people maintain six feet of distance from one another and the assemblage consists of no more than 100 people.

Acting under the Michigan Constitution of 1963 and Michigan law, I order the following:

1. For purposes of this order, Michigan comprises eight separate regions.

   a. Region 1 includes the following counties: Monroe, Washtenaw, Livingston, Genesee, Lapeer, Saint Clair, Oakland, Macomb, and Wayne.

   b. Region 2 includes the following counties: Mason, Lake, Osceola, Clare, Oceana, Newaygo, Mecosta, Isabella, Muskegon, Montcalm, Ottawa, Kent, and Ionia.

   c. Region 3 includes the following counties: Allegan, Barry, Van Buren, Kalamazoo, Calhoun, Berrien, Cass, Saint Joseph, and Branch.

   d. Region 4 includes the following counties: Oscoda, Alcona, Ogemaw, Iosco, Gladwin, Arenac, Midland, Bay, Saginaw, Tuscola, Sanilac, and Huron.

   e. Region 5 includes the following counties: Gratiot, Clinton, Shiawassee, Eaton, and Ingham.

   f. Region 6 includes the following counties: Manistee, Wexford, Missaukee, Roscommon, Benzie, Grand Traverse, Kalkaska, Crawford, Leelanau, Antrim, Otsego, Montmorency, Alpena, Charlevoix, Cheboygan, Presque Isle, and Emmet.

   g. Region 7 includes the following counties: Hillsdale, Lenawee, and Jackson.

   h. Region 8 includes the following counties: Gogebic, Ontonagon, Houghton, Keweenaw, Iron, Baraga, Dickinson, Marquette, Menominee, Delta, Alger, Schoolcraft, Luce, Mackinac, and Chippewa.

2. Any work that is capable of being performed remotely (i.e., without the worker leaving his or her home or place of residence) must be performed remotely.

3. Any business or operation that requires its employees to leave their home or place of residence for work is subject to the rules on workplace safeguards in Executive Order 2020-97 or any order that may follow from it.

4. Any individual who leaves his or her home or place of residence must:

   a. Follow social distancing measures recommended by the Centers for Disease Control and Prevention ("CDC"), including remaining at least six feet from people from outside the individual's household to the extent feasible under the circumstances.

   b. Wear a face covering over his or her nose and mouth—such as a homemade mask, scarf, bandana, or handkerchief—when in any enclosed public space, unless the individual is unable medically to tolerate a face covering.

   1. An individual may be required to temporarily remove a face covering upon entering an enclosed public space for identification purposes. An individual may also remove a face covering to eat or drink when seated at a restaurant or bar.

   2. Businesses and building owners, and those authorized to act on their behalf, are permitted to deny entry or access to any individual who refuses to comply with the rule in this subsection (b). Businesses and building owners will not be subject to a claim that they have violated the covenant of quiet enjoyment, to a claim of frustration of purpose, or to similar claims for denying entry or access to a person who refuses to comply with this subsection (b).

   3. Supplies of N95 masks and surgical masks should generally be reserved, for now, for health care professionals, first responders (e.g., police officers, fire fighters, paramedics),

and other critical workers who interact with the public.

4. The protections against discrimination in the Elliott-Larsen Civil Rights Act, 1976 PA 453, as amended, MCL 37.2101 et seq., and any other protections against discrimination in Michigan law, apply in full force to individuals who wear a face covering under this order.

5. Indoor social gatherings and events among persons not part of a single household are permitted, but may not exceed 10 people.

6. Outdoor social gatherings and events among persons not part of a single household are permitted, but only to the extent that:

a. The gathering or event does not exceed 100 people, and

b. People not part of the same household maintain six feet of distance from one another.

7. Unless otherwise prohibited by local regulation, outdoor parks and recreational facilities may be open, provided that they make any reasonable modifications necessary to enable employees and patrons not part of the same household to maintain six feet of distance from one another, and provided that areas in which social distancing cannot be maintained be closed, subject to guidance issued by the Department of Health and Human Services.

8. Unless otherwise prohibited by local regulation, public swimming pools, as defined by MCL 333.12521(d), may open as of June 8, 2020, provided that they are outdoors and limit capacity to 50% of the bather capacity limits described in Rule 325.2193 of the Michigan Administrative Code, and subject to guidance issued by the Department of Health and Human Services. Indoor public swimming pools must remain closed.

9. Day camps for children, as defined by Rule 400.11101(i) of the Michigan Administrative Code, may open as of June 8, 2020, subject to guidance issued by the Department of Licensing and Regulatory Affairs. Residential, travel, and troop camps within the meaning

of Rule 400.11101(n), (p), or (q) of the Michigan Administrative Code must remain closed
for the time being.

10. Unless otherwise prohibited by local regulation, libraries and museums may open as of
June 8, 2020, subject to the rules governing retail stores described in Executive Order
2020-97 or any order that may follow from it.

11. Stores that were closed under Executive Order 2020-96 (or that were open only by
appointment under the same order) must remain closed to the public (or open only by
appointment) until June 4 at 12:01 am. Such stores may then resume normal operations,
subject to local regulation and to the capacity constraints and workplace standards
described in Executive Order 2020-97 or any order that may follow from it.

12. Subject to the exceptions in section 14, the following places are closed to ingress, egress,
use, and occupancy by members of the public:

   a. Indoor theaters, cinemas, and performance venues.

   b. Indoor gymnasiums, fitness centers, recreation centers, sports facilities, exercise facilities,
   exercise studios, and the like.

   c. Facilities offering non-essential personal care services, including hair, nail, tanning,
   massage, traditional spa, tattoo, body art, and piercing services, and similar personal care
   services that involve close contact of persons.

   d. Casinos licensed by the Michigan Gaming Control Board, racetracks licensed by the
   Michigan Gaming Control Board, and Millionaire Parties licensed by the Michigan Gaming
   Control Board.

   e. Indoor services or facilities, or outdoor services or facilities involving close contact of
   persons, for amusement or other recreational or entertainment purposes, such as
   amusement parks, arcades, bingo halls, bowling alleys, indoor climbing facilities, indoor

dance areas, skating rinks, trampoline parks, and other similar recreational or entertainment facilities.

13. Unless otherwise prohibited by local regulation, restaurants, food courts, cafes, coffeehouses, bars, taverns, brew pubs, breweries, microbreweries, distilleries, wineries, tasting rooms, special licensees, clubs, and like places may be open to the public as follows:

    a. For delivery service, window service, walk-up service, drive-through service, or drive-up service, and may permit up to five members of the public at one time for the purpose of picking up their food or beverage orders, so long as those individuals are at least six feet apart from one another while on premises.

    b. In Regions 1, 2, 3, 4, 5, and 7, beginning at 12:01 am on June 8, 2020, for outdoor and indoor seating, subject to the capacity constraints and workplace standards described in Executive Order 2020-97 or any order that may follow from it.

    c. In Regions 6 and 8, for outdoor and indoor seating, subject to the capacity constraints and workplace standards described in Executive Order 2020-97 or any order that may follow from it.

14. The restrictions imposed by sections 12 and 13 of this order do not apply to any of the following:

    a. Outdoor fitness classes, athletic practices, training sessions, or games, provided that  coaches, spectators, and participants not from the same household maintain six feet of distance from one another at all times during such activities, and that equipment and supplies are shared to the minimum extent possible and are subject to frequent and thorough disinfection and cleaning.

    b. Services necessary for medical treatment as determined by a licensed medical provider.

   c. Health care facilities, residential care facilities, congregate care facilities, and juvenile justice facilities.

   d. Crisis shelters or similar institutions.

   e. Food courts inside the secured zones of airports.

   f. Employees, contractors, vendors, or suppliers who enter, use, or occupy the places described in section 12 of this order in their professional capacity.

15. Nothing in this order should be taken to interfere with or infringe on the powers of the legislative and judicial branches to perform their constitutional duties or exercise their authority. Similarly, nothing in this order shall be taken to abridge protections guaranteed by the state or federal constitution under these emergency circumstances.

16. Consistent with prior guidance, neither a place of religious worship nor its owner is subject to penalty under section 19 of this order for allowing religious worship at such place. No individual is subject to penalty under section 19 of this order for engaging in religious worship at a place of religious worship, or for violating the face covering requirement of section 4(b) of this order.

17. Executive Orders 2020-69 and 2020-96 are rescinded. Except as specified, nothing in this order supersedes any other executive order. This order takes effect immediately unless otherwise specified.

18. In determining whether to maintain, intensify, or relax the restrictions in this order, I will consider, among other things, (1) data on COVID-19 infections and the disease's rate of spread; (2) whether sufficient medical personnel, hospital beds, and ventilators exist to meet anticipated medical need; (3) the availability of personal protective equipment for the health care workforce; (4) the state's capacity to test for COVID-19 cases and isolate infected people; and (5) economic conditions in the state.

Whitmer - Executive Order 2020-119 (COVID-19) (June 1, 2020)

19. Consistent with MCL 10.33 and MCL 30.405(3), a willful violation of this order is a misdemeanor.

Given under my hand and the Great Seal of the State of Michigan.



- **MICHIGAN.GOV HOME**
  **ADA**
  **MICHIGAN NEWS**
  **POLICIES**

COPYRIGHT 2020 STATE OF MICHIGAN

THE OFFICE OF GOVERNOR GRETCHEN WHITMER 

WHITMER / NEWS / EXECUTIVE ORDERS

# Executive Order 2020-115 (COVID-19) (June 5, 2020)

### EXECUTIVE ORDER

### No. 2020-115

### Temporary restrictions on certain events, gatherings, and businesses

The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. There is currently no approved vaccine or antiviral treatment for this disease.

On March 10, 2020, the Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, I issued Executive Order 2020-4. This order declared a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended (EMA), MCL 30.401 et seq., and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended (EPGA), MCL 10.31 et seq.

Since then, the virus spread across Michigan, bringing deaths in the thousands, confirmed cases in the tens of thousands, and deep disruption to this state's economy, homes, and educational, civic, social, and religious institutions. On April 1, 2020, in response to the widespread and severe health, economic, and social harms posed by the COVID-19 pandemic, I issued Executive Order 2020-33. This order expanded on Executive Order 2020-4 and declared both a state of emergency and a state of disaster across the State of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, and the Emergency Powers of the Governor Act of 1945. And on April 30, 2020, finding that COVID-19 had created emergency and disaster conditions across the State of Michigan, I issued Executive Order 2020-67 to continue the emergency declaration under the Emergency Powers of the Governor Act, as well as Executive Order 2020-68 to issue new emergency and disaster declarations under the Emergency Management Act.

Those executive orders have been challenged in *Michigan House of Representatives and Michigan Senate v Whitmer*. On May 21, 2020, the Court of Claims ruled that Executive Order 2020-67 is a valid exercise of authority under the Emergency Powers of the Governor Act but that Executive Order 2020-68 is not a valid exercise of authority under the Emergency Management Act. Both of those rulings are being challenged on appeal.



Regions 6 and 8 have significantly fewer new cases per million each day than other regions in the state and have not shown an increase in viral activity in response to earlier relaxations of my orders. Taking into account the public health data and the ongoing costs of continued restrictions, I find it reasonable and necessary to move Regions 6 and 8 to Stage 5 of the Michigan Safe Start Plan as of June 10. Gyms, hair salons, indoor theaters, tattoo parlors, and similar establishments will be permitted to reopen, subject to strict workplace safeguards. Indoor social gatherings and organized events of up to 50 people will be allowed, as will outdoor social gatherings and organized events of up to 250 people.

In addition, I find it reasonable and necessary to allow personal care services—including hair and nail salons—to reopen statewide as of June 15. This constitutes a partial step along the path of an orderly transition to Stage 5 for those parts of the state outside Regions 6 and 8.

Acting under the Michigan Constitution of 1963 and Michigan law, I order the following:

1. For purposes of this order, Michigan comprises eight separate regions.
   a. Region 1 includes the following counties: Monroe, Washtenaw, Livingston, Genesee, Lapeer, Saint Clair, Oakland, Macomb, and Wayne.
   b. Region 2 includes the following counties: Mason, Lake, Osceola, Clare, Oceana, Newaygo, Mecosta, Isabella, Muskegon, Montcalm, Ottawa, Kent, and Ionia.
   c. Region 3 includes the following counties: Allegan, Barry, Van Buren, Kalamazoo, Calhoun, Berrien, Cass, Saint Joseph, and Branch.
   d. Region 4 includes the following counties: Oscoda, Alcona, Ogemaw, Iosco, Gladwin, Arenac, Midland, Bay, Saginaw, Tuscola, Sanilac, and Huron.
   e. Region 5 includes the following counties: Gratiot, Clinton, Shiawassee, Eaton, and Ingham.
   f. Region 6 includes the following counties: Manistee, Wexford, Missaukee, Roscommon, Benzie, Grand Traverse, Kalkaska, Crawford, Leelanau, Antrim, Otsego, Montmorency, Alpena, Charlevoix, Cheboygan, Presque Isle, and Emmet.
   g. Region 7 includes the following counties: Hillsdale, Lenawee, and Jackson.
   h. Region 8 includes the following counties: Gogebic, Ontonagon, Houghton, Keweenaw, Iron, Baraga, Dickinson, Marquette, Menominee, Delta, Alger, Schoolcraft, Luce, Mackinac, and Chippewa.
2. As of 12:01 am on June 15, 2020, subsection 12(c) of Executive Order 2020-110, which restricts the operation of facilities offering non-essential personal care services, is rescinded.
3. As of 12:01 am on June 10, 2020, individuals and businesses in Regions 6 and 8 are no longer subject to Executive Order 2020-110 and are instead subject to the rules described in this order.
4. Work that can be performed remotely (i.e., without the worker leaving his or her home or place of residence) should be performed remotely.

2. Limits the number of people in the venue to 25% of its maximum capacity or to 250, whichever is smaller. For purposes of this order, each separate auditorium or screening room is a separate venue.

c. Notwithstanding the restrictions in subsection (a), a concert space, race track, sports arena, stadium, or similar venue may, if it is outdoors, be open to spectators or patrons, but only to the extent that it:

1. Enables persons not part of the same household to maintain six feet of distance from one another at all times while in the venue.

2. Limits the number of people in the venue to 25% of its maximum capacity or to 500, whichever is smaller.

d. Subsection (a) does not apply to the incidental gathering of persons in a shared space, including an airport, bus station, factory floor, restaurant, shopping mall, public pool, or workplace.

8. Unless otherwise prohibited by local regulation, outdoor parks and recreational facilities may be open, provided that they make any reasonable modifications necessary to enable employees and patrons not part of the same household to maintain six feet of distance from one another, and provided that areas in which social distancing cannot be maintained be closed, subject to guidance issued by the Department of Health and Human Services.

9. Unless otherwise prohibited by local regulation, public swimming pools, as defined by MCL 333.12521(d), may be open, subject to guidance issued by the Department of Health and Human Services, provided that:

a. If they are outdoors, they limit capacity to 50% of the bather capacity limits described in Rule 325.2193 of the Michigan Administrative Code.

b. If they are indoors, they limit capacity to 25% of the bather capacity limits described in Rule 325.2193 of the Michigan Administrative Code.

10. Residential, travel, and troop camps within the meaning of Rule 400.11101(n), (p), or (q) of the Michigan Administrative Code remain closed for the time being.

11. Nothing in this order should be taken to interfere with or infringe on the powers of the legislative and judicial branches to perform their constitutional duties or exercise their authority. Similarly, nothing in this order shall be taken to abridge protections guaranteed by the state or federal constitution under these emergency circumstances.

12. Consistent with prior guidance, neither a place of religious worship nor its owner is subject to penalty under section 15 of this order for allowing religious worship at such place. No individual is subject to penalty under section 15 of this order for engaging in religious worship at a place of religious worship, or for violating the face covering requirement of section 6(b) of this order

13. Except as specified, nothing in this order supersedes any other executive order. This order takes effect immediately unless otherwise specified.

Executive Order 2020-114 (COVID-19) (June 5, 2020)

Executive Order 2020-116 (COVID-19) (June 5, 2020)

Executive Order 2020-113 (COVID-19) (June 4, 2020)

Executive Order 2020-112 (COVID-19) (June 3, 2020)

Executive Order 2020-111 (COVID-19) (June 1, 2020)



**MICHIGAN.GOV HOME**
**ADA**
**MICHIGAN NEWS**
**POLICIES**

COPYRIGHT 2020 STATE OF MICHIGAN

OFFICIAL WEBSITE OF MICHIGAN.GOV

THE OFFICE OF
# GOVERNOR GRETCHEN WHITMER

≡

WHITMER / NEWS / EXECUTIVE ORDERS

# Executive Order 2020-120 (COVID-19) (June 12, 2020)

**EXECUTIVE ORDER**

**No. 2020-120**

**Returning overnight camps to operation**

The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. There is currently no approved vaccine or antiviral treatment for this disease.

On March 10, 2020, the Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, I issued Executive Order 2020-4. This order declared a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended (EMA), MCL 30.401 et seq., and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended (EPGA), MCL 10.31 et seq.

Since then, the virus spread across Michigan, bringing deaths in the thousands, confirmed cases in the tens of thousands, and deep disruption to this state's economy, homes, and educational, civic, social, and religious institutions. On April 1, 2020, in response to the widespread and severe health, economic, and social harms posed by the COVID-19 pandemic, I issued Executive Order 2020-33. This order expanded on Executive Order 2020-4 and declared both a state of emergency and a state of disaster across the State of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, and the Emergency Powers of the Governor Act of 1945. And on April 30, 2020, finding that COVID-19 had created emergency and disaster conditions across the State of Michigan, I issued Executive Order 2020-67 to continue the emergency declaration under the Emergency Powers of the Governor Act, as well as Executive Order 2020-68 to issue new emergency and disaster declarations under the Emergency Management Act.



Those executive orders have been challenged in *Michigan House of Representatives and Michigan Senate v Whitmer*. On May 21, 2020, the Court of Claims ruled that Executive Order 2020-67 is a valid exercise of authority under the Emergency Powers of the Governor Act but that Executive Order 2020-68 is not a valid exercise of authority under the Emergency Management Act. Both of those rulings are being challenged on appeal.

On May 22, 2020, I issued Executive Order 2020-99, again finding that the COVID-19 pandemic constitutes a disaster and emergency throughout the State of Michigan. That order constituted a state of emergency declaration under the Emergency Powers of the Governor Act of 1945. And, to the extent the governor may declare a state of emergency and a state of disaster under the Emergency Management Act when emergency and disaster conditions exist yet the legislature has declined to grant an extension request, that order also constituted a state of emergency and state of disaster declaration under that act.

The Emergency Powers of the Governor Act provides a sufficient legal basis for issuing this executive order. In relevant part, it provides that, after declaring a state of emergency, "the governor may promulgate reasonable orders, rules, and regulations as he or she considers necessary to protect life and property or to bring the emergency situation within the affected area under control." MCL 10.31(1).

Nevertheless, subject to the ongoing litigation and the possibility that current rulings may be overturned or otherwise altered on appeal, I also invoke the Emergency Management Act as a basis for executive action to combat the spread of COVID-19 and mitigate the effects of this emergency on the people of Michigan, with the intent to preserve the rights and protections provided by the EMA. The EMA vests the governor with broad powers and duties to "cop[e] with dangers to this state or the people of this state presented by a disaster or emergency," which the governor may implement through "executive orders, proclamations, and directives having the force and effect of law." MCL 30.403(1)–(2). This executive order falls within the scope of those powers and duties, and to the extent the governor may declare a state of emergency and a state of disaster under the Emergency Management Act when emergency and disaster conditions exist yet the legislature has not granted an extension request, they too provide a sufficient legal basis for this order.

To suppress the spread of COVID-19, to prevent the state's health care system from being overwhelmed, to allow time for the production of critical test kits, ventilators, and personal protective equipment, to establish the public health infrastructure necessary to contain the spread of infection, and to avoid needless deaths, it was reasonable and necessary to direct residents to remain at home or in their place of residence to the maximum extent feasible. To that end, on March 23, 2020, I issued Executive Order 2020-21, ordering all people in Michigan to stay home and stay safe. In Executive Orders 2020-42, 2020-59, 2020-70, 2020-77, 2020-92, 2020-96, 2020-110, and 2020-115, I extended that initial order, modifying its scope as needed and appropriate to match the ever-changing circumstances presented by this pandemic.

The measures put in place by these executive orders have been effective: the number of new confirmed cases each day continues to drop. Although the virus remains aggressive and persistent—on June 11, 2020, Michigan reported 59,496 confirmed cases and 5,737 deaths—the strain on our health care system has begun to relent, even as our testing capacity has increased. We are now in the process of gradually resuming in-person work and activities. In so doing, however, we must move with care, patience, and vigilance, recognizing the grave harm that this virus continues to inflict on our state and how quickly our progress in suppressing it can be undone.

After considering the public health data, I find it reasonable and necessary at this point to allow overnight camps to resume operations as of June 15, 2020, subject to guidance from the Department of Licensing and Regulatory Affairs. I likewise find it reasonable and necessary to lift its suspension of school sports activities and other in-person extracurricular school activities, subject to rules on social distancing and the closure of indoor exercise facilities.

Acting under the Michigan Constitution of 1963 and Michigan law, I order the following:

1. Notwithstanding any other executive order, residential, travel, and troop camps within the meaning of Rule 400.11101(n), (p), or (q) of the Michigan Administrative Code may open as of 12:01 am on June 15, 2020, subject to guidance issued by the Department of Licensing and Regulatory Affairs.
2. Section I(1) of Executive Order 2020-65 is amended by striking the second sentence and replacing it with: "Consistent with the rules described in Executive Order 2020-110 (including any rules on social distancing and the closure of indoor exercise facilities) and Executive Order 2020-115, whichever order applies to the region in which the school is located, and any orders that follow from them, K-12 school sports activities and other in-person extracurricular school activities may resume."

Given under my hand and the Great Seal of the State of Michigan.

GRETCHEN WHITMER
GOVERNOR

Date: June 12, 2020

Time: 12:18 pm



## RELATED CONTENT

Executive Order 2020-152: Training of pharmacists

Executive Order 2020-144: Restoring Water Service to Occupied Residences during the COVID-19 Pandemic

Executive Order 2020-145: Safeguards to Protect Michigan's Workers from COVID-19

Executive Order 2020-146: Temporary COVID-19 protocols for entry into Michigan Department of Corrections facilities and transfers to and from Department custody; temporary recommended COVID-19 protocols …

Executive Order 2020-147: Masks

Executive Order 2020-148: Enhanced protections for residents and staff of long-term care facilities during the COVID-19 pandemic

Executive Order 2020-149: Temporary safety measures for food-selling establishments and pharmacies and temporary relief from requirements applicable to the renewal of licenses for the food-service …

Executive Order 2020-150: Temporary and limited relief from certain licensing and certification requirements applicable to COVID-19 response

Executive Order 2020-151: Declaration of state of emergency and state of disaster related to the COVID-19 pandemic

Executive Order 2020-143: Closing indoor service at bars (July 1, 2020)

Executive Order 2020-139: Naming the "Elliott-Larsen Building"

Executive Order 2020-140: Temporary suspension of youth work permit application requirements (June 30, 2020)

Executive Order 2020-141: Providing alternative notice of public hearings under Michigan's tax abatement statutes (June 30, 2020)

Executive Order 2020-142: Provision of preK-12 education for the 2020-2021 school year (June 30, 2020)

Executive Order 2020-137: Protecting the Food Supply and Migrant and Seasonal Agricultural Workers from the effects of COVID-19

Executive Order 2020-138: Encouraging the use of telehealth services during the COVID-19 emergency

Executive Order 2020-134: Eviction diversion program for COVID-19-related debtors 

Executive Order 2020-135: Creation of Michigan Nursing Homes COVID-19 Preparedness Task Force

Executive Order 2020-136: Temporary restrictions on entry into health care facilities, residential care facilities, congregate care facilities, and juvenile justice facilities

Executive Order 2020-132: Enhanced authorization of remote means for carrying out state administrative procedures



MICHIGAN.GOV HOME
ADA
MICHIGAN NEWS
POLICIES

COPYRIGHT 2020 STATE OF MICHIGAN